# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **PATRICIA CONKLE CRISWELL,**) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:08cv00023 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | By:   PAMELA MEADE SARGENT |
| Defendant. ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Patricia Conkle Criswell, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2008). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Criswell protectively filed her initial application for SSI on August 15, 2003, alleging disability beginning August 15, 2003. (Record, ("R."), at 14, 36.) A hearing before an Administrative Law Judge, ("ALJ"), was held on July 26, 2005, at which Criswell was represented by counsel. (R. at 36.) By decision dated October 6, 2005, the ALJ denied Criswell's claim. (R. at 36-40.) After the ALJ issued his decision, Criswell pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 14.) Criswell appealed the October 6, 2005, decision to this court, which found that substantial evidence supported the ALJ's decision. *See Conkle v. Barnhart*, Civil Action No. 2:06cv00024 (W.D. Va. Dec. 19, 2006).

The record shows that Criswell protectively filed a second application for SSI on October 12, 2005, alleging disability beginning October 7, 2005, based on blackouts, seizures, bi-polar disorder, severe headaches due to a head injury and the loss of an eye. (R. at 14, 74-77, 137.) The claim was denied initially and on reconsideration. (R. at 46-48, 51, 52-54.) Criswell then requested a hearing before an ALJ. (R. at 57.) The ALJ held a hearing on October 13, 2006, at which Criswell was represented by counsel (R. at 668-94.)

By decision dated March 13, 2007, the ALJ denied Criswell's claim. (R. at 14-18.) The ALJ found that Criswell had not engaged in any substantial gainful activity since her alleged onset date. (R. at 17.) The ALJ found that the medical evidence established that Criswell had severe impairments, namely loss of vision in the left eye, anxiety and depression, but he found that Criswell's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ found that Criswell's allegations regarding her limitations were not totally credible. (R. at 17.) The ALJ also found that Criswell had the residual functional capacity to perform simple, nonstressful work at all levels of exertion that could be performed by an individual who had monocular vision and moderate limitations in concentration and social functioning. (R. at 17.) The ALJ found that Criswell could perform her past work as a dishwasher, a housekeeper and a short-order cook. (R. at 17.) Therefore, the ALJ found that Criswell was not under a disability as defined in the Act at any time through the date of his decision, and he found that she was not eligible for benefits. (R. at 18.) *See* 20 C.F.R. § 416.920(f) (2008).

After the ALJ issued his decision, Criswell pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 7-10.) Criswell then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2008). The case is before this court on Criswell's motion for summary judgment filed January 2, 2009, and the Commissioner's motion for summary judgment filed February 4, 2009.

## II. Facts[1]

Criswell was born in 1976, (R. at 74), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She obtained her general equivalency development, ("GED"), diploma, and has past relevant work experience as a dishwasher, a housekeeper, a short-order cook and a delivery driver. (R. at 138, 674, 687.)

Vocational expert, John Newman, testified at Criswell's hearing. (R. at 686-93.) Newman classified Criswell's past work as light[2] and unskilled. (R. at 687.) Newman stated that Criswell could perform these jobs with her vision impairments. (R. at 687.) Newman also stated that Criswell could perform these jobs if limited to simple work that did not require high limits of concentration, that did not require continuous interaction with the public and that was not fast-paced. (R. at 688.)

In rendering his decision, the ALJ reviewed records from Dr. Randall Pitone, M.D., a psychiatrist; Norton Community Hospital; Stone Mountain Health Services; Eugenie Hamilton, Ph.D., a state agency psychologist; Dr. Frank M. Johnson, M.D., a state agency physician; Hugh Tenison, Ph.D., a state agency psychologist; Dr. Joseph Duckwall, M.D., a state agency physician; and University of Virginia Health

---

[1] Since this court affirmed the ALJ's October 6, 2005, decision, the evidence prior to that decision is no longer at issue. *See Conkle v. Barnhart*, Civil Action No. 2:06cv00024. Accordingly, the court will address only the medical evidence relevant to the instant case, which is for the period of October 7, 2005, through March 13, 2007.

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2005).

-4-

System.

On September 8, 2005, Dr. Randall Pitone, M.D., a psychiatrist, evaluated Criswell. (R. at 526.) He noted that Criswell was alert, calm, cooperative, appropriately dressed and well-groomed with appropriate behavior and mannerisms. (R. at 527.) Although Criswell was moderately depressed and anxious, her affect was appropriate with good range. (R. at 527.) She had intact thought associations, organized and goal-directed thinking and no delusions. (R. at 527.) Criswell had normal intelligence, intact memory, intact cognitive function and adequate insight. (R. at 527.) Dr. Pitone diagnosed recurrent, moderate to severe major depressive disorder, post-traumatic stress disorder and anxiety disorder, and he assigned a then-current Global Assessment of Functioning score, ("GAF"),[3] of 40-45.[4] (R. at 527.) On October 10, 2005, Dr. Pitone noted that Criswell was only mildly depressed and mildly anxious. (R. at 524.) She had no symptoms of psychosis and no change in cognitive function. (R. at 524.)

On February 21, 2006, Criswell reported that she was doing "fairly well" on her medication. (R. at 513.) Dr. Pitone reported that Criswell was clam and cooperative,

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[4]A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 32. A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

-5-

made good eye contact and established a good rapport. (R. at 513.) Criswell's behavior and mannerisms were appropriate, and her speech was normal. (R. at 513.) Dr. Pitone noted that Criswell was only mildly depressed, she presented with no psychosis and showed no change in cognitive function. (R. at 513.) Dr. Pitone also noted that Criswell had missed several appointments, and he urged her to comply with her medication and appointments. (R. at 513.) On June 13, 2006, Criswell reported that she was "doing fairly well" on her medication (R. at 591-92.) Criswell had a euthymic mood and a pleasant affect. (R. at 591.) She was well-groomed, calm and cooperative. (R. at 591.) Criswell had no psychosis and no change in cognitive functioning. (R. at 591.) She was encouraged to start a daily exercise routine as well as a proper diet. (R. at 591.) On July 18, 2006, Criswell reported increased anxiety and panic attacks. (R. at 643.) She reported that she was easily irritated and angered. (R. at 643.) Criswell reported that she "feels like a taxi service" because "everyone comes to me to haul them places." (R. at 643.) On July 26, 2006, Dr. Pitone noted that Criswell had normal psychomotor activity. (R. at 641.) Although she was moderately depressed and anxious, Criswell had no psychosis or cognitive impairment. (R. at 641.) In September 2006, Criswell reported improvement in her mental condition and increased energy. (R. at 639.)

On October 5, 2005, Criswell sought treatment at Norton Community Hospital for complaints of chest pain. (R. at 420-29.) Criswell was diagnosed with pleuritic pain and discharged later that day after she reported feeling better. (R. at 422, 426.) Criswell returned in November 2005 for complaints of syncope. (R. at 409-19.) Criswell's physical and mental examinations were normal. (R. at 410, 413.) She was oriented and had clear, appropriate speech and full motor strength. (R. at 413.) In

-6-

Case 2:08-cv-00023-JPJ-PMS   Document 18   Filed 05/14/09   Page 6 of 15   Pageid#: 73

October 2006, Criswell presented to the emergency room complaining of chest pain. (R. at 645-62.) Criswell was diagnosed with atypical chest pain, cardiac origin was ruled out, depression and anxiety. (R. at 647, 651.)

On January 18, 2006, Eugenie Hamilton, Ph.D., a state agency psychologist, indicated that Criswell was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention/concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting. (R. at 485-86.)

Hamilton also completed a Psychiatric Review Technique form, ("PRTF"), indicating that Criswell suffered from an organic mental disorder, an affective disorder, an anxiety-related disorder and substance addiction disorder. (R. at 488-503.) She indicated that Criswell was mildly limited in her activities of daily living. (R. at 499.) Hamilton indicated that Criswell was moderately limited in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 499.) Hamilton also indicated that Criswell had not experienced any episodes of decompensation. (R. at 499.) She opined that Criswell could perform simple, unskilled work. (R. at 502.)

On January 20, 2006, Dr. Frank M. Johnson, M.D., a state agency physician, found that Criswell had no exertional limitations. (R. at 504-09.) Dr. Johnson also found that Criswell had no postural, manipulative, communicative or environmental limitations. (R. at 506-07.) He found that Criswell had visual limitations involving her left eye. (R. at 506.)

On April 3, 2006, Hugh Tenison, Ph.D., a state agency psychologist, completed a PRTF indicating that Criswell suffered from an affective disorder, an anxiety-related disorder, a personality disorder and a substance addiction disorder. (R. at 536-51.) He found that Criswell was mildly limited in her activities of daily living. (R. at 548.) Tenison indicated that Criswell was moderately limited in her ability to maintain social functioning and to maintain concentration, persistence or pace. (R. at 548.) He also indicated that Criswell had not experienced any episodes of decompensation. (R. at 548.)

Tenison completed a mental assessment indicating that Criswell was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention/concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting. (R. at 553-

54.)

On June 21, 2006, Dr. Joseph Duckwall, M.D., a state agency physician, indicated that Criswell had no exertional limitations. (R. at 557-61.) Dr. Duckwall also found that Criswell had no manipulative or communicative limitations. (R. at 559-60.) He found that Criswell had visual limitations involving her left eye, that she could never climb and that she should avoid all exposure to hazards, such as machinery and heights. (R. at 559-60.)

On July 28, 2006, Criswell was seen at the University of Virginia Health System complaining of left leg pain, numbness in her left foot and toes and low back pain. (R. at 601.) She reported that she fell down some stairs the previous year. (R. at 601.) Upon examination, Criswell had weakness in her left lower extremity. (R. at 601.) It was reported that Criswell's low back pain was a result of disc herniation at the L4-L5 level. (R. at 601.) There is no objective evidence in the record indicating that Criswell suffers from a disc herniation. The record does show that on July 26, 2006, Criswell presented to Stone Mountain Health Services complaining of left leg pain for the previous year. (R. at 636.) She reported no symptoms of depression, anxiety or insomnia. (R. at 636.) Examination of Criswell's left ankle showed tenderness on palpatation. (R. at 637.) No edema, redness or bruising was noted. (R. at 637.) Criswell had normal gait and range of motion. (R. at 637.) On July 31, 2006, Criswell reported that she had a mole removed from her left leg on July 28, 2006. (R. at 633.) She complained of pain and soreness at the removal site. (R. at 633.) She had normal gait and range of motion. (R. at 634.)

Case 2:08-cv-00023-JPJ-PMS   Document 18   Filed 05/14/09   Page 9 of 15   Pageid#: 76

*III. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated March 13, 2007, the ALJ denied Criswell's claim. (R. at 14-18.) The ALJ found that the medical evidence established that Criswell had severe impairments, namely loss of vision in the left eye, anxiety and depression, but he

found that Criswell's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.) The ALJ also found that Criswell had the residual functional capacity to perform simple, nonstressful work at all levels of exertion that could be performed by an individual who had monocular vision and moderate limitations in concentration and social functioning. (R. at 17.) The ALJ found that Criswell could perform her past work as a dishwasher, a housekeeper and a short-order cook. (R. at 17.) Therefore, the ALJ found that Criswell was not under a disability as defined in the Act at any time through the date of his decision, and he found that she was not eligible for benefits. (R. at 18.) *See* 20 C.F.R. § 416.920(f) (2008).

Criswell argues that the ALJ erred by improperly determining her residual functional capacity.[5] (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-9.)

The ALJ found that Criswell had the residual functional capacity to perform simple, non-stressful work at all levels of exertion that could be performed by an individual who had monocular vision and moderate limitations in concentration and social functioning. (R. at 17.) Based on my review of the record, I find that substantial evidence exists to support this finding. While the record shows that Criswell had

---

[5]In asserting that she had greater limitations than the ALJ found, Criswell relies heavily on medical evidence from before the relevant period, which was addressed in a prior decision. (Plaintiff's Brief at 6-9.) In particular, Criswell cites the reports of Drs. Bhatti and Vaught and psychologists Spangler and Lanthorn, all of which predate the period at issue and were addressed in the Commissioner's October 6, 2005, decision and this court's Memorandum Opinion affirming that decision. (Plaintiff's Brief at 7-8; R. at 36-39); *see also Conkle v. Barnhart*, Civil Action No. 2:06cv00024 (W.D. Va. Dec. 19, 2006). This evidence was prior to the period of disability at issue in this case, October 7, 2005, through March 13, 2007.

-11-

monocular vision, there is no evidence of any exertional limitations. Criswell's physical examinations revealed no abnormalities and showed that she ambulated without difficulty, had full range of motion of the arms and legs and retained normal bulk, tone and strength. (R. at 410, 421, 569, 637, 647.) This finding was supported by the opinions of the state agency physicians, Drs. Johnson and Duckwall, who opined that Criswell had visual limitations due to her monocular vision, but no exertional functional limitations. (R. at 504-11, 557-62.)

The evidence shows that while Criswell had moderate depression and anxiety in September 2005, her affect was appropriate with good range. (R. at 527.) Criswell had intact thought associations, organized and goal-directed thinking, no delusions, normal intelligence, intact memory, intact cognitive function and adequate insight. (R. at 527.) In addition, Criswell's condition improved with treatment. (R. at 513, 591-92, 639.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). A mental evaluation performed in June 2006 showed that Criswell had a euthymic mood, pleasant affect, appropriate manner and behavior, no psychosis and no change in cognitive functioning. (R. at 591.) The state agency psychologists found that, while Criswell had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace, she was still able to perform simple, nonstressful work. (R. at 485-99, 502, 536-48, 556.)

Criswell asserts that the GAF scores assigned by Dr. Pitone in September 2005 demonstrate that she had greater limitations than the ALJ found during the period at issue. (Plaintiff's Brief at 9.) Criswell's reliance on these GAF scores from before the

-12-

relevant period is misplaced. *See Brown v. Astrue*, 2008 WL 5455719 at *5 n.6 (W.D. Va. Dec. 31, 2008) (stating that a "GAF score is a snapshot of a person's functioning at a particular point in time, and is not a longitudinal indicator of the person's functioning"). The ALJ recognized that Dr. Pitone assessed Criswell with GAF scores of 40-45. (R. at 15.) The ALJ noted that Criswell's condition "improved quickly with prescription medication" during the period at issue. (R. at 16, 513, 591, 639, 641.) In fact, the ALJ also noted that the most recent medical reports showed that Criswell was calm, pleasant and cooperative, had increased energy, conversed easily, had normal speech and normal psychomotor activity and had no psychosis or cognitive impairment. (R. at 16, 639, 641.)

Based on the above, I find that substantial evidence exists to support the ALJ's finding that Criswell had the residual functional capacity to perform simple, nonstressful work at all levels of exertion that could be performed by an individual who has monocular vision and moderate limitations in concentration and social functioning.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

> 1. Substantial evidence exists to support the ALJ's finding with regard to Criswell's residual functional capacity;
>
> 2. Substantial evidence exists to support the ALJ's finding that Criswell could perform her past work as a dishwasher,

-13-

>    a housekeeper and a short-order cook; and
>
> 3. Substantial evidence exists to support the ALJ's finding that Criswell was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Criswell's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the

Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 14th day of May 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE